IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL E. THOMAS, | ) |
| Plaintiff, | ) No. 02 C 8848 |
| v. | ) Suzanne B. Conlon, Judge |
| GUARDSMARK, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Carl Thomas ("Thomas"), a security guard, sued Guardsmark, Inc. ("Guardsmark") for wrongful termination in violation of public policy. Thomas claimed Guardsmark terminated his employment because of statements he made during a November 2001 television interview. Jury trial commenced on July 7, 2005. On July 13, 2005, the jury returned a $78,001 verdict in Thomas' favor. Dkt. Nos. 87, 89. Guardsmark's oral motion for judgment as a matter of law, made at the close of Thomas' case, was denied.[1] *See* Tr. 207, 209-11, 242-44. Guardsmark's renewed motion for judgment as a matter of law, filed without leave of court, was stricken. Dkt. No. 89; Tr. 400. Judgment was entered on July 15, 2005. Dkt. No. 90. Before the court are Guardsmark's motions: (1) for judgment as a matter of law; (2) for a new trial; and (3) to alter or amend the judgment.

---

[1] Thomas argues Guardsmark's pending motion for judgment as a matter of law must be stricken because Guardsmark did not file the motion before the case was submitted to the jury. Because Guardsmark moved for judgment as a matter of law at the close of Thomas' case, this argument is rejected.

1

## DISCUSSION

I.  **Motion for Judgment as a Matter of Law**

Guardsmark moves for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). When considering a motion for judgment as a matter of law following a jury verdict, the court does not re-weigh the evidence presented at trial or make credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, considering the totality of the evidence, the court must determine whether any rational jury could have found for Thomas. *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004). The court may grant judgment as a matter of law if, drawing all reasonable inferences in Thomas' favor, there was "no legally sufficient evidentiary basis for a reasonable jury to find for [Thomas]." *Reeves*, 530 U.S. at 150. When the case turns on the credibility of witnesses, the movant faces a "herculean burden." *Ciesielski v. Hooters Mgmt. Corp.*, No. 03 C 1175, 2004 U.S. Dist. LEXIS 25884, *3 (N.D. Ill. Dec. 27, 2004), *quoting Gile v. United Air Lines*, 213 F.3d 365, 372 (7th Cir. 2000).

Guardsmark contends the jury had no legally sufficient evidentiary basis to find for Thomas on his retaliatory discharge claim because: (1) Thomas did not prove his termination contravened a clearly mandated public policy; and (2) Guardsmark stated a non-pretextual, non-discriminatory reason for the discharge. Further, Guardsmark argues Thomas presented insufficient evidence to support a punitive damages award. Finally, Guardsmark asserts judgment should be entered in its favor because the United States Bankruptcy Court has reopened Thomas' 2004 bankruptcy case and judicial estoppel bars his claim.

2

A. **Public Policy**

Guardsmark argues Thomas failed to establish his termination violated a clearly mandated public policy. Specifically, Guardsmark contends Thomas' termination did not violate public policy as mandated by the Private Detective, Private Alarm, Private Security and Locksmith Act of 1993, 225 ILCS 446/1 *et seq.* (the "Private Detective Act"), or the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*

In an effort to define public policy, the Illinois Supreme Court has stated: "[t]here is no precise definition of the term. It can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's Constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 421 N.E.2d 876, 878 (1981). Guardsmark's contention that Thomas needed to present evidence to the jury to prove his termination violated public policy must be rejected. Whether public policy is implicated by a defendant's actions is not a jury question. This court previously ruled that terminating Thomas for his conduct – publicly disclosing a convicted felon's employment as a security guard – implicates clearly mandated public policy under the Private Detective Act. *See Thomas v. Guardsmark*, No. 02 C 8848, 2003 U.S. Dist. LEXIS, *6-8 (N.D. Ill. Jan. 6, 2003). Guardsmark's argument that the Private Detective Act prohibits Thomas' disclosure of information acquired during his employment was explicitly rejected:

> Guardsmark responds that the Act evidences a public policy against Thomas' disclosure of information to the media . . . Guardsmark interprets this section to prohibit any disclosure of wrongdoing. This interpretation is too broad. Thomas reported that Guardsmark employed a self-proclaimed convicted felon as a security guard. The Act declares this violation 'inimical to the public welfare and . . . constitute[s] a public nuisance.' Reports of activity that impinge on public welfare or safety are easily and readily accepted as furthering public policy, whether or not

3

the activity is criminal. Thus, Thomas states a claim and alleges a clearly mandated public policy that was violated by his discharge.

*Id.* (internal citations omitted). Moreover, on summary judgment the court reiterated that Thomas' public interview regarding public safety constituted protected conduct. *See Thomas v. Guardsmark*, No. 02 C 9948, 2005 U.S. Dist. LEXIS 7407, *21-22 (N.D. Ill. Mar. 16, 2005). Finally, Guardsmark's argument that Thomas failed to establish a violation of public policy mandated by the Illinois Whistleblower Act is irrelevant. Thomas did not assert an Illinois Whistleblower Act claim.

### B. Non-Pretextual Reason for Discharge

Guardsmark argues Thomas failed to prove his retaliation claim because Guardsmark stated a non-pretextual, non-discriminatory reason for Thomas' discharge - violations of company policy - and an employee may be terminated for any lawful reason. Whether or not routine Title VII jurisprudence is applicable to an Illinois retaliatory discharge case brought in federal court, Guardsmark apparently refuses to entertain the possibility that the jury did not believe its proffered reason for termination and instead determined Guardsmark's stated reason was pretextual. Sufficient evidence regarding the reasons for and timing of termination, particularly through cross-examination of Guardsmark witness Edward Healy, *see* Tr. 220-325, provides an evidentiary basis for the jury to disbelieve Guardsmark's stated reasons for termination and to instead find Thomas' termination was retaliatory. Guardsmark's proffer of a non-discriminatory reason is insufficient to escape liability if a jury determines the proffered reason is a pretext for unlawful activity. In essence, the jury made credibility assessments to determine Thomas' termination was retaliatory. Considering the totality of the evidence and viewing that evidence in Thomas' favor, Guardsmark has not met

its herculean burden to overturn that decision. *See Ciesielski*, 2004 U.S. Dist. LEXIS 25884 at *3.

C. **Punitive Damages**

Guardsmark contends the jury's $50,000 punitive damages award is unsupported by the evidence. Specifically, Guardsmark asserts Thomas offered no evidence that Guardsmark's termination of his employment involved "fraud, actual malice, deliberate violence or oppression, willfulness, or gross negligence" or "willful and wanton" conduct to support the award. Mot. at 9 (citation omitted). Instead, Guardsmark maintains the evidence established the *absence* of willful or wanton conduct because:

> 1. Mr. Healy testified that Guardsmark's investigation determined that Thomas did not inform anyone at Guardsmark that Mr. Kubera had a criminal record;
>
> 2. He testified that he did not fill out an internal "301" termination form for Thomas not because of any malice, but because the post 9/11 time was "chaotic" and "it wasn't high on the priority list and it didn't get done;"
>
> 3. He testified that he did not write Thomas regarding his termination because he "was aware that Mr. Thomas was receiving unemployment benefits and [he] just didn't feel it was necessary;" and
>
> 4. Ms. Martin testified that Guardsmark's offices, including the Chicago office, fell behind on their paperwork all across the country.

*Id.* (citations omitted). Nevertheless, drawing all inferences in Thomas' favor, the jury could reasonably have determined: (1) Mr. Healy conducted a sham investigation; (2) Guardsmark lied to Thomas that it would inform him of the investigation's results; (3) Guardsmark intentionally suspended Thomas, rather than terminating him immediately, to prevent Thomas from knowing he had a retaliatory discharge claim until the employment agreement's limitations period expired; and (4) Guardsmark imposed additional hardships on Thomas by opposing his first unemployment insurance claim and denying him his 401(k) funds. *See e.g.*, Tr. 220, 263-81 (stipulations and

5

testimony regarding investigation); Tr. 70-71, 73-77, 219-21, 285, 315 and PX 3 (stipulations and testimony that Thomas was not told of the termination decision and Decker letter that Thomas would be notified when investigation was complete); Tr. 220-23, 315, 350 (stipulations and testimony that other employees were not indefinitely suspended, there was no other investigation where the employee was uninformed of the result, and that typical internal procedures for termination were not followed); Tr. 69-70, 77-78, 315-21 and PX 3 (testimony regarding 401K, unemployment insurance application and Decker letter that Thomas would be notified when investigation was complete). There was a sufficient evidentiary basis for the jury to find for Thomas on his punitive damages claim.

### D.  Bankruptcy Case

Guardsmark argues Thomas did not properly schedule his federal lawsuit against Guardsmark in his 2003 and 2004 bankruptcy filings and that judicial estoppel bars his retaliatory discharge claim. This court has twice rejected Guardsmark's argument. *See Thomas v. Guardsmark*, 02 C 8848, 2005 U.S. Dist. LEXIS 14170 (N.D. Ill. July 7, 2005) (denying Guardsmark's emergency motion to dismiss, filed two days before trial); Dkt. No. 82-1 (denying Guardsmark's motion for reconsideration). The court will not re-hash the arguments made in Guardsmark's prior motions or the bases for rejecting those arguments. The only changed circumstance since Guardsmark's prior motions on this issue – the United States Bankruptcy Court's subsequent reopening of Thomas' 2004 bankruptcy case – has no bearing on this court's decisions. Guardsmark's arguments are rejected for the third time.

E.  **Conclusion**

The jury's verdict in Thomas' favor was supported by a sufficient evidentiary basis. Guardsmark's motion for judgment as a matter of law must be denied.

II. **Motion for a New Trial**

A party seeking a new trial based on evidentiary errors faces a heavy burden. *See Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 570 (7th Cir. 1997). To justify a new trial, there must be a substantial showing that the evidentiary error likely affected the trial outcome. *Id.* Further, Fed. R. Civ. P. 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Guardsmark moves for a new trial because the court improperly: (1) excluded eight of Guardsmark's proposed jury instructions; (2) excluded two of Guardsmark's exhibits; and (3) prohibited Guardsmark from impeaching Thomas' testimony. In addition, Guardsmark argues a new trial is warranted because the back pay award was against the weight of the evidence.

A.  **Jury Instructions**

Guardsmark contends the court improperly excluded a back pay instruction and proposed jury instructions 1, 2, 5, 6, 7, 8, 10. For several instructions, Guardsmark merely recites the proposed instruction and either states that "the failure to give the instruction was error," or provides a cursory statement, without legal authority, that the failure to give the instruction permitted the jury to consider matters the instruction would have prohibited. *See* Mot. at 2-7 (Instructions 1, 5, 6, 7, 8,

7

10 and back pay instruction). Moreover, Guardsmark's failure to: (1) compare the refused instructions with the instructions given; (2) enunciate how its proposed instructions were superior to those given; (3) show that the instructions given were incomplete or inaccurate; or (4) demonstrate how the error was prejudicial, warrants denial of the motion. *See Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004) (movant must show both that the instructions did not adequately state the law and that the error was prejudicial because the jury was likely to be confused or misled); *Mayall v. Peabody Coal Co.*, 7 F.3d 570, 573 (7th Cir. 1993) (new trial not warranted if instructions as a whole were sufficient to inform the jury of the applicable law); *Emmel v. Coca-Cola Bottling Co.*, 904 F. Supp. 723, 742 (N.D. Ill. 1995), *aff'd*, 95 F.3d 627 (7th Cir. 1996) ("since defendant makes no claim that the jury instructions, taken as a whole, were deficient, defendant's objection as a general matter should be overruled on this point").

It is worth noting that Guardsmark's objection regarding Instruction 8, punitive damages, is particularly disingenuous. Guardsmark asserts the failure to give the proposed instruction was erroneous because it permitted the jury to award punitive damages even if it found that Guardsmark's conduct was not "malicious." The following discussion occurred at the jury instruction conference:

| | |
|---|---|
| Mr. Howe: | Defendant's 8 is the punitive damage instruction. And we request that the Court consider an instruction which we believe is a proper statement of the law that the Court should instruct the jury to find Guardsmark liable for punitive damages if it's conduct was malicious. |
| The Court: | Now, we're going back in history because I am giving the Seventh Circuit pattern instruction. |
| Mr. Howe: | Your Honor, this is a state law case and state law governs, and our language is modified between the IPI and the Seventh Circuit. |

| The Court: | Yes, but malice can include reckless disregard of a person's rights and that's the language . . . the plaintiff uses. It's ironic, both sides cite the Seventh Circuit pattern instructions. Is there anything about malice in the Seventh Circuit pattern instructions? |
|---|---|
| Mr. Howe: | Your Honor, as to that, we were drawing off the IPI. The IPI language is actually "willful and wanton." *And we believe that's substantially equivalent to malicious. We have no problem giving "willful and wanton," but we believe that's the proper statement of Illinois law which governs.* |
| The Court: | Any objection to inserting "willful and wanton" before "reckless disregard?" |
| Mr. Huizenga: | We have no objection to that. |
| The Court: | Okay. So the second paragraph, as modified, plaintiff's instruction would read: " . . . you may assess punitive damages only if you find that the conduct of Guardsmark's managerial employees was willful and wanton and in reckless disregard of Mr. Thomas' rights . . ." |
| Mr. Huizenga: | That's fine. |
| Mr. Howe: | Thank you, your Honor. |

Tr. at 386-87 (emphasis added). Given Guardsmark's representations that it considered "willful and wanton" to be substantially similar to "malicious," and that it had "no problem" with "willful and wanton," Guardsmark's objection to the absence of the term "malicious" in the punitive damages instruction rings hollow.

### B. Exhibits

Guardsmark argues a new trial is warranted because the court did not admit Guardsmark's exhibits 6 and 7 into evidence. Guardsmark contends exhibits 6 and 7, letters Thomas wrote to Guardsmark in June 2004, were relevant to its trial defense that Thomas was terminated for not

9

reporting protection problems to his supervisor. Exhibits 6 and 7 were excluded on relevancy grounds. *See* Tr. at 110-13. Moreover, to the extent Guardsmark implies the letters demonstrate Thomas never put his complaints regarding Kubera's criminal record in writing, the omission of the exhibits is harmless because Guardsmark elicited that information from Thomas on cross-examination. *See* Tr. 110-14. Guardsmark fails to make any showing that the exclusion of the letters affected its substantial rights. *See* Fed. R. Civ. P. 61. Refusal to grant a new trial because the exhibits were excluded is not remotely inconsistent with substantial justice. *Id.*

### C. Impeachment

Guardsmark contends a new trial should be granted because it was precluded from impeaching three aspects of Thomas' testimony. First, Guardsmark argues the court should have allowed the testimony of Virginia Garcia of the Chicago Police Department to impeach his testimony that he worked for the police department. Guardsmark asserts Thomas' conflicting testimony about working for the police department affects his credibility. The court clearly indicated its intention to permit Garcia's testimony, but Guardsmark failed to produce this witness before the close of its case. More importantly, Thomas was willing to stipulate that he had not worked for the Chicago Police Department. *See* Tr. at 360-63. The following stipulation was read to the jury: "Carl Thomas was a police officer at Union Train Station in Chicago but never worked for the Chicago Police Department." *Id.* at 363. Any alleged error by excluding Garcia's testimony was harmless.

Second, Guardsmark asserts it was precluded from impeaching Thomas' testimony that he resigned from the Chicago Police Department in 1991 for medical reasons when he in fact "did not leave his employment during this time period for health reasons." Mot. at 8. Guardsmark does not bother to identify a single sustained objection or piece of excluded evidence that restrained its

10

impeachment abilities. In any event, the reasons for Thomas' resignation were irrelevant to trial. Guardsmark attaches an opinion from another judge in this district purportedly stating the reasons why Thomas left his job. Mot. at Ex. A, *Thomas v. Metra Rail Serv.*, 941 F. Supp. 758 (N.D. Ill. 1996) (Norgle, J.). The opinion is irrelevant, of questionable admissibility and was not offered at trial.

Finally, Guardsmark argues the court erroneously prevented Guardsmark from impeaching Thomas' testimony that he was married to Patricia Thomas on September 12, 1998, when he was still married to his first wife on that date. Again, Guardsmark does not identify a single sustained objection or piece of excluded evidence that restrained its impeachment abilities. Moreover, the attached documents relating to Thomas' divorce from his first wife are irrelevant and of no probative value. Guardsmark fails to demonstrate how the alleged errors warrant a new trial or affect substantial rights.

### D. Back Pay Award

In a cursory, two paragraph argument, Guardsmark contends a new trial is warranted because the jury's $28,000 back pay award was against the weight of the evidence. Specifically, Guardsmark asserts multiplying Thomas' $8.50 hourly wage by his 46 weeks of unemployment only equals $15,640. Further, Guardsmark argues the evidence established Thomas made no efforts to find employment while out of work and failed to mitigate his damages.

"Unless the amount of the jury award is 'monstrously excessive' or bears no rational connection to the evidence, this court will not disturb the jury's damage calculation." *Bennett v. Smith*, No. 96 C 2422, 2000 U.S. Dist. LEXIS 18253, *20-21 (N.D. Ill. Dec. 18, 2000), *citing Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989), *Hamilton v. Svatik*, 779 F.2d 383, 388

(7th Cir. 1985) ("A jury's damage award should not be disturbed so long as it is not 'so large as to shock the conscience of the court'"). Guardsmark oversimplifies the back pay calculations by relying solely on Thomas' hourly wage without any consideration of the number of hours Thomas actually worked, the amount of money Thomas made in the months prior to his termination, Thomas' W-2 form (Pl. Ex. 15), or the difference in pay Thomas received between Guardsmark and his new job at Intertech. The jury's verdict bears a rational connection to the evidence.

### E. Conclusion

Guardsmark fails to demonstrate that the alleged errors affected its substantial rights or that refusal to grant a new trial is inconsistent with substantial justice. *See* Rule 61. The motion for a new trial must be denied.

### III. Motion to Alter or Amend Judgment

Pursuant to Rule 59(e), Guardsmark moves to alter or amend Thomas' judgment to reduce his back pay award by $10,959 in unemployment benefits he received and to provide that judgment is entered in favor of Thomas' reopened bankruptcy estate.

Thomas received unemployment insurance benefits from the Illinois Department of Employment Security for nine months during the period of time for which back pay was awarded. In ruling on Thomas' motion *in limine* to exclude from trial the amount of unemployment benefits he received, the court held the amount of Thomas' unemployment benefits was irrelevant to the jury issues, but that unemployment benefits remained subject to consideration by the court in the event of a jury award. *See* 6/21/05 Mem. Op. and Order, Dkt. No. 71-1 at 5-6. While the decision to offset a back pay award by the amount awarded for unemployment compensation is within the court's discretion, many courts have refused to permit offsets on the grounds that unemployment

compensation is separate and collateral from the amount a wrongdoer-employer owes the employee. *See e.g., Perry v. Larson*, 794 F.2d 279, 285-86 (7th Cir. 1986) ("unemployment compensation is a source of funds independent of the transaction giving rise to the claim and thus is collateral . . . [defendant] cannot benefit simply because the state has provided a means of helping those who are out of work, justly or unjustly"); *Tzoumis v. Tempel Steel Co.*, 168 F. Supp. 2d 871, 874 (N.D. Ill. 2001) ("the windfall of unemployment benefits is best conferred upon the employee/claimant rather than the employer (as a damages offset)"); *Steck v. Bimba Manufacturing Co.*, No. 96 C 7442, 1997 U.S. Dist. LEXIS 17112, *5-6 (N.D. Ill. Oct. 29, 1997) (same). Although any windfall of unemployment benefits is generally conferred upon the employee/claimant, Guardsmark contends Thomas should not receive a windfall because: (1) he did not seek employment during the time he received unemployment benefits; and (2) he allegedly lied on his benefits application when he stated he was constructively discharged if, as he testified, he did not know he was terminated.

Preliminarily, despite Guardsmark's characterization of the evidence, the trial evidence included Thomas' testimony that he submitted his job application at the Illinois Department of Employment Security office via computer on several occasions, *see* Tr. 156-59, and the fact that his application stated "constructive discharge – suspended since Nov. 16, 2001 – pending investigation." *See* Def. Ex. 10. In any event, Guardsmark's concern that Thomas be prevented from receiving a windfall is addressed by Illinois law. A back pay award for time during which the employee received unemployment benefits must be jointly payable to the claimant and to the Director of the Department of Employment Security of the State of Illinois. *See* 820 ILCS 405/900(D). The statute essentially eliminates any concern that Thomas will receive a windfall. Nor has Guardsmark established that it is entitled to an offset based on collateral benefits paid to Thomas by the State of Illinois. To the

extent Guardsmark implies it should receive an offset because employers contribute to the unemployment insurance fund, this argument has been rejected. *See Perry*, 794 F.2d at 286, n.3. The motion to amend the judgment to offset the back pay award must be denied.

Similarly, Guardsmark's motion to amend the judgment in favor of Thomas' bankruptcy estate must be denied. This court twice held that Thomas adequately disclosed his retaliation lawsuit in his 2004 bankruptcy and there was no evidence that he wilfully misrepresented the value of his claim to the trustee. *See Thomas v. Guardsmark*, 02 C 8848, 2005 U.S. Dist. LEXIS 14170 (N.D. Ill. July 7, 2005); Dkt. No. 82-1. Further, the court determined the bankruptcy trustee abandoned the claim. *Id.* Although Guardsmark made the bankruptcy trustee aware of Thomas' lawsuit before trial, *see* Dkt. No. 75-1, Guardsmark Emergency Mot. at 10, n.7, the trustee did not attempt to intervene or press an estate claim. Instead, the trustee filed a motion with the bankruptcy court on July 7, 2005 to re-open the bankruptcy case, appeared before the bankruptcy judge on July 13, 2005, and obtained an order re-opening the case dated July 19, 2005. *See* Guardsmark Mot. at Ex. G, Thomas Resp. to Guardsmark's Mot. for Jud. as Matter of Law at 13 and Ex. E. The fact that the bankruptcy court re-opened the case – apparently without knowledge of this court's orders and without notice to Thomas – does not affect this court's rulings or the jury's verdict, which was rendered in Thomas' favor before the bankruptcy case was re-opened.

## CONCLUSION

For the foregoing reasons, Guardsmark's motions for judgment as a matter of law, for a new trial and to alter or amend the judgment are denied.

August 30, 2005                    ENTER:

                                   _____
                                   Suzanne B. Conlon
                                   United States District Judge